WILFRID A. TILSON *vs.* CRANE BROOK COMPANY.

Plymouth.    December 1, 1924. — February 24, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Actionable Tort.    Great Pond.    Water and Water Rights.*

In an action of tort by the owner of a cranberry bog, who had a right to pump water into the bog from an adjacent great pond, against a corporation maintaining a flume at the outlet of the pond, for damages to the plaintiff's crop due to the lowering of the surface of the pond by the defendant to such an extent that the plaintiff could not pump water therefrom to his bog, the plaintiff alleged in his declaration that such acts of the defendant were done "wilfully and maliciously or negligently . . . for the purpose of lowering the water . . . below the established low water mark; which said low water mark was above the bottom of said plaintiff's pump."    At the trial there was evidence that the defendant's flashboards were out before the time in question and that the level of the pond was as low as it ever had been, but there was no evidence as to what was the natural level of the pond or its low water mark nor that the defendant had removed its flashboards.    There was evidence that, the defendant's attention being called to the absence of the flashboards, one of its officers had them restored.    There was no evidence that the defendant had any malice or ill will toward the plaintiff or a purpose to injure him.    *Held*, that a verdict for the defendant should have been ordered.

Tort. Writ dated May 16, 1921.

In an amended declaration, the plaintiff alleged in substance his right to pump water from Sampsons Pond for the protection of his cranberry bog and the maintenance by the defendant of a flume or dam at the outlet of the pond. He then alleged "That the defendant for the purpose of injuring the plaintiff, by its servants or agents, wilfully and maliciously or negligently removed, or allowed to be removed, or permitted to remain removed, one or more of the flash boards of said flume or dam for the purpose of lowering the water of said Sampsons Pond below the established low water mark; which said low water mark was above the bottom of said plaintiff's pump; and that because of said lowering of the water of Sampsons Pond the said pumps of the plaintiff were unable to take water for the purpose of flowing the plaintiff's cranberry bog. That the purpose of permitting the lowering of said pond and the result of said lowerings, was that the water was withdrawn from said Sampsons Pond to such an extent as to make the available water at the pumps of the plaintiff below the lowest point at which the said pumps would receive water for the purpose of flowing the cranberry bog of the plaintiff." There were other allegations that, because he was unable to get water by reason of the acts of the defendant, the plaintiff's cranberry crop was destroyed by frost in May, 1915.

In the Superior Court, the action was tried before *Broadhurst*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. There was a verdict for the plaintiff in the sum of $3,000. The defendant alleged exceptions.

*G. W. Stetson*, for the defendant.

*M. Collingwood*, for the plaintiff.

Rugg, C.J. This is an action of tort to recover damages for the malicious and wilful lowering of Sampsons Pond, a great pond in the town of Carver, whereby the plaintiff was prevented to his great loss from exercising his privilege of pumping water therefrom to protect his cranberry vines. The evidence tended to show these facts: The plaintiff was

the owner of a cranberry bog near Sampsons Pond. Water in sufficient quantity to flow the bog was essential to protect the vines from frost and consequent damage to the crop. The plaintiff had been granted a license by the board of harbor and land commissioners "To excavate a channel and lay a wooden flume below the natural high water mark in Sampsons Pond . . . for the purpose of drawing water to flow his cranberry bog . . . the bottom of said flume to be four feet wide and four feet below the level of high water in said pond as shown by a bench mark . . . ." One of the conditions of the license was that the "waters of said pond shall not be lowered except for necessary and reasonable use in flowing the cranberry bog . . . and in no event drawn lower than four feet below the level of the bench mark." The plaintiff constructed appliances adapted for pumping water from the pond so as to flow his cranberry bog, the intake for the water being forty-five inches below the level of the bench mark. Water sufficient to flow the bog to a depth of twelve inches would lower the level of water in the pond one half inch. At the outlet of the pond there is and has been since before 1850 a dam, at the time of the plaintiff's injury under the control of the defendant, with a flume and flashboards, whereby the level of the pond could be raised or lowered. A few rods below this dam the defendant owned and maintained a mill equipped with flume and flashboards. Between these two dams was a little pond capable of being raised to the level of Sampsons Pond, so that its level might be controlled by flashboards at the mill. In the spring of 1915, the water was as low in Sampsons Pond as it ever had been seen before, according to old residents and observers in the neighborhood. Its level was forty-five inches below the bench mark. At that level the plaintiff was unable to pump water on his bog with his appliances. There was no evidence as to the natural level of the pond or of its low water mark. The only evidence as to the defendant's connection with the actual level of the pond in 1915 was that its treasurer testified that he visited the outlet of Sampsons Pond in May, 1915, and most of the flashboards were out; that the water was running out of the pond; that about May 25 or 26 he

put in the flashboards; that the directors or other officers of the defendant had never discussed the subject of the plaintiff's taking water from the pond. One Sullivan testified that the president of the defendant, some time in 1914, while near the appliances of the plaintiff, said to him, "You can't get no water out of here." That was all the conversation. It did not appear that Sullivan had any connection with the plaintiff. On or about May 5, 1915, the plaintiff, finding that the water was going down, without being held by flashboards, caused a letter to be written by his attorney to the defendant calling its attention to the fact that the water was becoming so low that he was unable to get sufficient water to flow his bog. On May 29 the plaintiff was unable to operate his pump because the water in Sampsons Pond was so low, whereby his cranberries were greatly injured by a frost on that and the following nights.

This statement demonstrates, without further argument, that there was no evidence of wilful or malicious injury to the plaintiff by the defendant. There is nothing to show the circumstances or the reasons of the flashboards being off the dam, or that the defendant took them off, or that the defendant had any malice or ill will toward the plaintiff or purpose to injure him, or that it had any prevision of a frost on May 29 and 30, 1915. It is unnecessary to consider other questions.

*Exceptions sustained.*